### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### ELECTRO VECTOR, INC., Respondent.

#### No. 75–3638.

United States Court of Appeals, Ninth Circuit.

Aug. 5, 1976.

Michael S. Winer (argued), N. L. R. B., Washington, D. C., for petitioner.

Michael P. Merrill (argued), of Merrill & Thompson, Santa Rosa, Cal., for respondent.

OPINION

Before BARNES, Senior Circuit Judge, and WRIGHT, and KILKENNY, Circuit Judges.

BARNES, Senior Circuit Judge:

The National Labor Relations Board seeks enforcement of its order against Electro Vector, Inc. Affirming the administrative law judge, the Board held that the Company violated 29 U.S.C. § 158(a)(3) and (1) by granting a bonus for work previously performed, to employees who were actually working on September 30, and November 27, 1974, while denying such bonus for work previously performed to other employees who were striking on either of those two dates. We hold that because the Board's finding that the bonuses were wages, hours, or other term[s] or condition[s] of employment is not supported by substantial evidence, enforcement of its order is denied.

The relevant facts follow. Electro manufactures electronic equipment in a plant located near Santa Rosa, California. The Company's production and maintenance employees have been represented for collective bargaining purposes by the Union for a number of years. On May 2, 1974, after the expiration of the prior contract and the breakdown of negotiations, the Union struck Electro over economic issues.

Electro followed a discretionary policy of paying "year-end" bonuses based on a fiscal year ending September 30, 1974. The previous 1972–73 fiscal year was the first year for paying cash bonuses. In prior years, turkeys and hams were distributed. Attendance and exceptional merit determined the amount paid above and below the base figure of $150.00. Eligibility for the bonus depended upon an employee maintaining "active payroll status" on two crucial dates—the final day of the fiscal year and the actual date of bonus payment, here, November 27, 1974.

The group which received the bonus included non-striking workers, strikers who had returned to work, and replacements for strikers. All of these employees had active payroll status on the two relevant dates—September 30 and November 27. Excluded were thirty-three strikers who had not worked either date and nine employees who had worked only one of those dates.

Subsequently, the Union filed charges against Electro alleging discrimination against the striking employees through the Company's refusal to pay them bonuses. The N.L.R.B. issued a complaint based on the charges and ordered a hearing. After such a hearing was conducted, the administrative law judge concluded that "[b]y disqualifying strikers from bonuses . . . [Electro] engaged in unfair labor practices within Section 8(a)(1) and (3) of the [National Labor Relations] Act." The judge recommended the issuance of a cease and desist order and the payment of 1974 bonuses to the striking employees. Electro excepted. The Board, however, adopted the administrative law judge's recommendations and issued an order requiring bonus payments to the employees. Electro appeals from this order.

■ Implicit in the administrative proceedings below is a finding that Electro's bonus practice involved a term or condition of employment. No such finding was expressly made nor was this implicit finding discussed in the parties' briefs before this Court. Rather, the proceedings below focused on whether Electro's activities discouraged union membership and whether these activities had an anti-union motive. *See National Labor Relations Board v. Great Dane Trailers, Inc.,* 388 U.S. 26, 32–34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967); *Portland Willamette Company v. National Labor Relations Board,* 534 F.2d 1331, 1332 (9th Cir. 1976). But in order to determine whether Electro's activities violated the Act here, a preliminary requirement must be satisfied. It must be shown that there had been employer discrimination with respect to "[any] term or condition of employment."

*See N.L.R.B. v. Great Dane Trailers, supra,* 388 U.S. at 30, 87 S.Ct. at 1796; *E. I. Du Pont De Nemours and Company v. N.L.R.B.,* 480 F.2d 1245, 1248 (5th Cir. 1973).

The importance of this finding is that a bonus which is considered a "gift" can be withheld by the employer at will, but a bonus which is in reality a "wage" becomes a term or condition of employment. *See Century Electric Motor Company v. N.L.R.B.,* 447 F.2d 10, 14 (8th Cir. 1971); *N.L.R.B. v. Harrah's Club,* 403 F.2d 865, 874 (9th Cir. 1968); *N.L.R.B. v. Electric Steam Radiator Corporation,* 321 F.2d 733, 736–37 (6th Cir. 1963). In elaborating upon this concept in *N.L.R.B. v. Nello Pistoresi & Son, Inc.,* 500 F.2d 399 (9th Cir. 1974), this Court observed: "Bonuses . . . are considered wages if they are of such a fixed nature and have been paid over a sufficient length of time to have become a reasonable expectation of the employees and, therefore, part of their anticipated remuneration." *Id.* at 400.[1]

Applying these principles to the case before us, the Board was required to find that Electro's bonus policy involved a term or condition of employment. This Court is bound to accept this finding unless it is not supported by substantial evidence in the record taken as a whole. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 477–91, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Upon examining the record, we find no such finding or any discussion thereof. Hence, we must conclude that the Board's finding is not supported by substantial evidence.

Our conclusion is based on the following evidence which appears in the record. Ms. Ann L. Waterman, an accountant for Electro, testified that prior to 1973, the company did not have a bonus program. In 1973, the company determined that it was financially able to pay a bonus. Even then, however, there was no official program established. Ms. Waterman further testified that even after the company began

giving a cash bonus to its employees, this bonus was not automatically given. Mr. Philip B. Del Valle, the vice-president and general manager of Electro, testified that the giving of a bonus was not mandatory but was rather at the discretion of Electro's owner. He further testified that the bonus issue was not part of the Union contract that was in existence at the time of the controversy. Additionally, Mr. Del Valle stated:

> "[P]rior to 1973 there weren't any bonuses. We gave turkeys or hams, but the inflation got so bad we realized the predicament of many of the people, and so I went to the owner. I don't have the authority to disburse profits. I went to the owner and I got him to agree to a certain sum of money and this was given, in essence, in lieu of a turkey or in lieu of a ham, as being a little bit more substantial; but it wasn't a formal profit-sharing plan in any way. It was totally informal . . . ."

R.T. at 29–30. None of the above testimony has been refuted by any other witness.

We thus must determine whether the payment of a cash bonus by Electro was of a fixed nature and had been paid over a sufficient period of time to have become a part of the employees' anticipated remuneration. From the above evidence, we conclude that the 1973–74 fiscal year was only the second year in which such a cash bonus was given. The amounts of these bonuses were determined primarily by Mr. Del Valle and ranged greatly from a base of $150.00. In *N.L.R.B. v. Nello Pistoresi & Son, Inc., supra,* we held that because of the short two-year history of the company giving cash bonuses to its employees and the indefinite nature of the bonuses, the bonuses did not constitute wages but were rather gifts. 500 F.2d at 400–01. We find the case at bar indistinguishable. If Electro had adopted a formal program of paying a cash bonus or had paid a bonus for a number of years, we might reach a different result.

---

1. Neither petitioner nor respondent has seen fit to mention this two-year-old case in their briefs.

But here, the cash bonus had only been given for two years, and was agreed upon by the owner only informally. We therefore conclude that the bonus given by Electro was a gift rather than a wage. Hence, the Union has failed to prove that there has been employer discrimination with respect to any term or condition of employment.

Accordingly, enforcement of the Board's order is denied. Respondent's counsel to prepare order.